Dr. S.J. ROGERS and Dr. N. Jay
Rogers, Appellants,

v.

Dr. Jerome WOLFSON, Appellee.

No. 05–88–00234–CV.

Court of Appeals of Texas,
Dallas.

Jan. 6, 1989.

Rehearing Denied Feb. 13, 1989.

Orrin Harrison, III, Timothy W. Mountz,
Jesse Green, Dallas, for appellants.

Steven R. Wolfson, Dallas, for appellee.

Before ENOCH, C.J., and CARVER [1] and HUGHES [2], JJ.

ENOCH, Chief Justice.

Dr. S.J. Rogers and Dr. N. Jay Rogers appeal from the district court's grant of Dr. Jerome Wolfson's motion for summary judgment. The Rogers sued Wolfson for an accounting and to recover sums of money due and owing under the terms of a written agreement. In six points of error, the Rogers contend that the trial court erred in granting Wolfson's motion for summary judgment. Agreeing with points three through six, we reverse and remand this case for a trial on the merits.

### Facts

The Rogers are optometrists who were formerly owners of Texas State Optical Company (T.S.O.). Wolfson is also an optometrist. In 1969, the Rogers and Wolfson executed a written agreement consisting of two phases. The first phase provided for the operation of a T.S.O. office as a partnership between the Rogers and Wolfson. The second phase provided for the sale of the Rogers' interest in the partnership and the office to Wolfson. By later amendment, the parties agreed that during the second phase of the contract, the T.S.O. office would be moved from San Antonio, Texas, to Dallas, Texas.

The business was operated as a partnership until 1977 with the Rogers receiving fifty percent of the profits. In 1977, the Rogers sold their partnership interest to Wolfson in consideration for the payment of ten percent of the "net cash" of the office for the next eight years. Before the transfer, the Rogers notified Wolfson by telephone and certified mail that certain provisions of the second contract phase were rescinded, canceled, and declared null and void. Wolfson expressly refused to consent to any of the changes announced by the Rogers. However, the transfer of the partnership interest and office from the Rogers to Wolfson was consummated.

Being concerned that Wolfson had underreported the "net cash" of the office and, therefore, had not paid the full amount that was due, the Rogers sought to exercise their right under the second phase of the contract to audit Wolfson's financial records. Wolfson refused. This lawsuit commenced.

In answer to the Rogers' lawsuit, Wolfson asserted that the contract was illegal and unenforceable. The trial court granted Wolfson's motion for summary judgment, holding that the contract was "illegal, void and unenforceable" under the Texas Antitrust Act. The trial court subsequently granted the Rogers' motion for summary judgment on Wolfson's counterclaim for damages. Final judgment was entered providing that all parties take nothing.[3]

### Standard of Review

The function of a summary judgment is not to deprive a litigant of his right to a full hearing on the merits of any real issue of fact, but to eliminate patently unmeritorious claims and untenable defenses. *Gulbenkian v. Penn*, 151 Tex. 412, 416, 252 S.W.2d 929, 931 (1952). A summary judgment for the defendant disposing of the entire case is proper only if, as a matter of law, the plaintiff could not succeed upon any theories pleaded. *Delgado v. Burns*, 656 S.W.2d 428, 429 (Tex.1983). In this case, the judgment states that the summary judgment is granted for defendant because the contract sued upon is illegal. Therefore, our inquiry focuses on the alleged illegality.

The Rogers argue that the trial court erred in granting Wolfson's motion for summary judgment because: (1) the first phase of the contract created a partnership between the parties and, therefore, did not violate the Texas Antitrust Act (agree-

---

1. The Honorable Spencer Carver, Justice, retired, Court of Appeals, Fifth District of Texas at Dallas, sitting by assignment.

2. The Honorable W.A. Hughes, Justice, retired, Court of Appeals, Second District of Texas at Fort Worth, sitting by assignment.

3. Wolfson did not appeal from the summary judgment on his counterclaim.

ments between partners are not subject to the Texas Antitrust Act); (2) the purportedly illegal provisions of the second phase of the contract were rescinded, canceled, and declared null and void, and this act by the Rogers was ratified by Wolfson; and (3) assuming that the provisions were not rescinded, the purportedly illegal provisions of the agreement were severable and, thus, the contract terms which were not illegal were enforceable.

### Illegality of the Contract: Ratification

In points of error three and four, the Rogers contend that the purportedly illegal provisions of the second phase of the contract were rescinded, canceled, and declared null and void. In support of this contention, the facts show that the Rogers notified Wolfson by certified mail and phone that they were alerted that certain provisions in the contract may violate antitrust laws. Consequently, they renounced these provisions and declared them to be unenforceable and that such provisions would be no longer considered a part of the agreement. In response, Wolfson expressly stated that he would not agree to any changes. However, subsequently, the transfer of the business was completed.

■ Wolfson contends that because the contract was illegal from the start, the trial court was correct to decline to give the contract validity. He argues that if a contract is illegal and void, it cannot be subject to ratification.

Ordinarily, Texas courts will not enforce a contract which is void because it violates a statute and is, therefore, illegal. *See Mayfield v. Troutman*, 613 S.W.2d 339, 344 (Tex.Civ.App.—Tyler 1981, writ ref'd n.r.e.); *Peniche v. AeroMexico*, 580 S.W.2d 152, 157 (Tex.Civ.App.—Houston [1st Dist.] 1979, no writ). However, there is a difference between a contract that is void because the subject matter of the contract is illegal and a contract where the subject matter is legal, but certain ancillary provisions in the contract are illegal. We con-

clude that any illegality in this cause involves certain ancillary provisions and not the subject matter of the contract.

■ The issue facing this Court is whether Wolfson's continuation of the contract after notification by the Rogers of their intent to delete certain provisions constituted ratification of the changes. Express ratification is not necessary; any act based on a recognition of the contract as subsisting or any conduct inconsistent with an intention of avoiding it has the effect of affirming the contract. *See Rosenbaum v. Texas Bldg. & Mort. Co.*, 140 Tex. 325, 167 S.W.2d 506, 508 (1943); *Newsom v. Starkey*, 541 S.W.2d 468, 472 (Tex.Civ.App.—Dallas 1976, writ ref'd n.r.e.). Wolfson received the business from the Rogers as the contract provided. The presence or absence of the provisions in question had no effect on the benefits Wolfson received. Certainly, Wolfson cannot accept the T.S.O. office, but now, when it is his turn to transfer benefits to the Rogers, assert that the contract is unenforceable. *See Daniel v. Goesl*, 161 Tex. 490, 341 S.W.2d 892, 895 (1960); *Rosenbaum*, 167 S.W.2d at 508.

■ Wolfson argues, however, that he never intended to accept the proffered changes in the contract. He made his denial clear to the Rogers. Mental intent or reservation, though, does not affect determination of the question of ratification. *Spellman v. American Universal Investment Co.*, 687 S.W.2d 27, 30 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.) (citing *Oram v. General American Oil Co.*, 513 S.W.2d 533, 534 (Tex.1974); *Goldring v. Goldring*, 523 S.W.2d 749, 761 (Tex.Civ.App.—Fort Worth 1975, writ ref'd n.r.e.)). Even if Wolfson stated that he did not intend to ratify the changes, continuing with the contract and accepting the transfer of the business was inconsistent with the intention to void the contract. Therefore, a fact issue exists on the issue of ratification and summary judgment in favor of Wolfson was improper. The Rogers' third and fourth points of error are sustained.

*Illegality of the Contract: Severability*

 In their fifth and sixth points of error, the Rogers argue that the evidence does not support the granting of Wolfson's motion for summary judgment because it was possible for the court to sever the purportedly illegal provisions of the agreement from the remaining legal provisions of the agreement. They contend that the purpose of the contract is legal and the contract should not be voided because of the allegedly illegal provisions. The Rogers argue that there is a genuine issue of fact as to whether the parties intended for the purportedly illegal provisions of the agreement to be severable from the remaining provisions of the Agreement.

Wolfson responds that the contract contained no severability clause and that the contract is impossible to reform. He argues that this Court should not undertake to enforce a contract that violates the Texas Antitrust Law and that severing the provisions will not render the contract legal. He contends that the parties should be left where they are found, even if amounts are owing from one party to another for goods or services delivered pursuant to the contract.

 The doctrine of severability is applied in situations where the original consideration of the contract is legal and incidental promises within the contract are found to be illegal. *See Williams v. Williams*, 569 S.W.2d 867, 871 (Tex.1978). In such a case, the invalid provisions may be severed and the valid portion of the agreement upheld. *See Wicks v. Comves*, 110 Tex. 532, 221 S.W. 938, 939 (1920); *C.C. Slaughter Cattle Co. v. Potter County*, 235 S.W. 295, 307 (Tex.Civ.App.—Amarillo 1921), *aff'd*, 254 S.W. 775 (Tex.Comm'n App.1923, judgmt adopted); *cf. Smith v. Morton I.S.D.*, 85 S.W.2d 853, 858 (Tex.Civ. App.—Amarillo 1935, writ dism'd). On this point, the issue is whether Wolfson and the Rogers would have entered into the agreement absent the illegal parts. *See McFarland v. Haby*, 589 S.W.2d 521 (Tex.Civ. App.—Austin 1979, writ ref'd n.r.e.).

The basic purpose of the second phase of the contract was for the Rogers to sell to Wolfson their partnership and ownership interests in a T.S.O. office in exchange for ten percent of the net cash of that office for eight years. The provisions under concern dealt with prearranged pricing schedules and arrangements for buying supplies. These provisions were clearly ancillary to the main purpose of the agreement and inured solely to the benefit of the Rogers. Whether Wolfson would have agreed to buy and the Rogers would have agreed to sell the business in the absence of the provisions is self evident. The sale of the business was consummated *after* the Rogers renounced the enforceability of these provisions and notified Wolfson of their intent.

*Mandril v. Kasishke*, 620 S.W.2d 238 (Tex.Civ.App.—Amarillo 1981, writ ref'd n.r.e.), is dispositive of this issue. In *Mandril*, Mandril brought action against Kasishke for breach of contract. Kasishke claimed that the contract contained provisions that violated the Texas Antitrust Act. Even though Mandril was not attempting to enforce those provisions, Kasishke asserted the general rule that courts will not enforce an illegal contract. The facts showed that Kasishke had received the benefits of the contract that she was entitled to receive, that the contract was fully executed and that it had terminated by its own terms. Kasishke then attempted to avoid liability for her obligations under the contract by alleging that portions of it violated the Texas Antitrust Act. However, the Amarillo court concluded that the severability exception was applicable, and held for Mandril.

 With *Mandril* in mind, we hold that where an otherwise legal contract contains an illegal provision that is not an essential feature of the agreement, thus being clearly severable from other valid provisions, the other provisions of the agreement will not be deemed to be invalid simply because of the presence of the illegal provision. Therefore, a fact issue exists on the issue

of severability and summary judgment was improper. The Rogers' fifth and sixth points of error are sustained.

*Illegality of the Contract: Partnership*

In the Rogers' first two points of error, they point out that the first part of the contract created a partnership and, since violations of the Texas Antitrust Act cannot occur between partners, they argue that the provisions in the second part of the contract could not be illegal. We do not consider this issue to be controlling. If the contract is not ratified sans the illegal provisions, or if the illegal provisions are not severable, then the entire contract is illegal and no partnership could be formed pursuant to such contract. On the other hand, if the contract is ratified deleting the offending provisions, or if the offending provisions are severable from the balance of the contract, the issue of partnership is irrelevant. We overrule points of error one and two.

The judgment is REVERSED and the cause REMANDED to trial court for further proceedings consistent with this opinion.