In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-06-481 CV


____________________



THE CITY OF BEAUMONT, Appellant



V.



INTERNATIONAL ASSOCIATION OF FIREFIGHTERS,


LOCAL UNION NO. 399, Appellee






On Appeal from the 58th District Court


Jefferson County, Texas


Trial Cause No. A-177,463






 OPINION 


 This case arises from the arbitration of a compensation dispute between the City of
Beaumont ("City") and the International Association of Firefighters, Local Union No. 399
("IAFF"). The arbitration was conducted pursuant to the Fire and Police Employee Relations
Act ("FPERA"). See Tex. Loc. Gov't Code Ann. §§ 174.001-.253 (Vernon 1999 & Supp.
2006). In this appeal, we hold that the arbitration panel exceeded its authority by considering
an issue for which proper notice was not given, by arbitrating an issue that was not in dispute, 
and by proceeding to arbitrate without enforcing all of the provisions which the parties had
agreed would apply to their dispute. Accordingly, the judgment entered by the trial court
must be set aside. We render judgment that the IAFF take nothing by its suit, without
prejudice, however, to such rights it may have, if any, to initiate further arbitration
proceedings under the governing contract.

Procedural Background and The Arbitration Award


 The terms of the agreement governing the present dispute between the IAFF and the
City are contained within a collective bargaining agreement dated effective October 1, 2001
("the 2001 contract"). Under that contract, the parties agreed to commence collective
bargaining on a new contract by no later than July 1, 2005. The 2001 contract contains an
"Evergreen Clause," in which the parties' acknowledged the contract's four-year term, and
further agreed "that [the contract] shall remain in full force until replaced by a successor
agreement."

 The impasse procedure, Article XXXIV of the 2001 contract, contains the parties'
agreement to arbitrate compensation disputes. It required "written notice to the other party
containing specifications of the issue or issues in dispute." With respect to issues submitted
to arbitration, Article XXXIV's impasse procedure further provided:

3. In making its decision, the Arbitration Panel may consider only the
following:


 a) The requirements of Section 174.021, Local Government Code.

 b) The total compensation, including wages and benefits, and
conditions of employment provided by the EMPLOYER to
members of the bargaining unit.

 c) The total compensation and terms and conditions of employment
of State Civil Service certified, full-time firefighters in all Texas
cities.

 d) The rate of increase or decrease in the cost of living for the
Houston area determined by the Consumer Price Index for the
period beginning with the effective date of the current contract
and ending with the most recent published report at the time of
the commencement of the hearing.

 e) After all other possible considerations of comparison, the
arbitration panel may give consideration to revenues available
to the employer.


4. Information concerning hours of work and insurance benefits and costs
may be considered by the Arbitration Panel for purposes of determining
total compensation and terms and conditions of employment but may
not be used specifically to support an amendment by the EMPLOYER
of the hours of work of Beaumont firefighters or the coverage and costs
of insurance benefits for such firefighters.


 The parties commenced negotiations for a new contract on June 3, 2005. By August 
2005, the parties had reached an impasse, and the IAFF requested arbitration. On March 8,
2006, the IAFF notified the arbitrators of its issues for arbitration, as follows:

 1) The appropriate wage increase for the contract years 2005-2008
(Article XXX and Addendum A);

 2) Whether the contract should continue to include impasse procedure
language inconsistent with the statutory command (Article XXXIV);

 3) Whether the contract should be modified so that negotiations
commence on February 1 to allow for timely resolution of contract
language by agreement or arbitration (Article XXXV);

 4) Whether retirees should pay the same health insurance premiums as
active members (Article XXXI);

 5) Whether vacations and holidays shall be awarded to members in the
same way as civilian employees, pursuant to statute (Article XIII);

 6) Whether the pension contribution of the City should be increased, since
members do not participate in Social Security Retirement benefits and
the City does not make contributions on their behalf in that regard
(Article XV); 

 7) Whether various provisions for "extra" pay should be increased to
reflect current economic realities (Article XVII - Educational Incentive
Pay; Article XIX - Certification Pay; Article XX - Skills Incentive Pay;
Article XXI - Clothing Maintenance; Article XXIX - Standby Pay)[;]

 8) Whether Training and Arson/Prevention Division members shall be
covered by a set work schedule as had been in effect January 1, 2005
(four days per week, ten hours per day) (Article XXIII); [and]

 9) Whether members will be allowed to participate in IAFF "457"
Retirement Plans and IAFF "Retiree Savings Health Plans (flex plan)"
(New Article). 


 Subsequently, during March and July 2006, the arbitration panel heard evidence
regarding the parties' dispute. The panel issued its decision on July 21, 2006. The panel,
consisting of three members, voted two-to-one in favor of the award. In explaining the
majority panel's reasoning, the author of the award stated: "I shall not apply the requirement
set forth in Article XXXIV, Section 3(c) of the expiring Agreement to the determinations
reached herein." The award further explained that "this Board is not bound by provisions
which are contrary to statute, even if the Employer wants them applied and the Union is
prepared to accept their applicability in this proceeding to assure it does not lose on another,
arguably more important issue." Thus, in reaching its decision on the IAFF's compensation
award, the panel's award reflects that the arbitration panel did not follow the criteria to which
the parties had agreed under Article XXXIV of their 2001contract.

Judicial Review


 FPERA awards are subject to judicial review. The FPERA states:

 (a) An award of an arbitration board may be reviewed by a district court for the
judicial district in which the municipality is located only on the grounds that:


 (1) the arbitration board was without jurisdiction;

 (2) the arbitration board exceeded its jurisdiction;

 (3) the order is not supported by competent, material, and substantial 
 evidence on the whole record; or

 (4) the order was obtained by fraud, collusion, or similar unlawful means.


Tex. Loc. Gov't Code Ann. § 174.253(a) (Vernon 1999). The district court entered its
judgment confirming the arbitration award on October 23, 2006. We review a trial court's
decision to affirm or vacate an arbitration award de novo. Babcock & Wilcox Co. v. PMAC,
Ltd., 863 S.W.2d 225, 229 (Tex. App.-Houston [14th Dist.] 1993, writ denied). 

Jurisdiction of Arbitration Panel


 In issue four of its brief, the City alleges that the trial court should not have confirmed
the award because the arbitrators exceeded their authority. The scope of an arbitrator's
authority to adjudicate a dispute is determined by the scope of the controlling arbitration
clause. A party seeking to compel arbitration must establish the existence of an arbitration
agreement and show that the claims raised fall within the scope of that agreement. See
Cantella & Co., Inc. v. Goodwin, 924 S.W.2d 943, 944 (Tex. 1996). Whether a given issue
is within the scope of the issues submitted to an arbitrator is a question of law. Babcock, 863
S.W.2d at 229-230. 

 The agreement to arbitrate in the contract before us requires that "both parties shall
submit all issues in dispute to arbitration." The contract defines the disputed issues as "all
matters which the parties have been unable to resolve through collective bargaining." The
contract further requires each party to provide "written notice to the other party containing
specifications of the issue or issues in dispute[.]" It appears that the parties' 2001 contract
contemplated that written notice occur prior to the arbitration hearing.

 The IAFF submitted a written notice defining the issues in dispute. In its first issue,
the IAFF identified the contract years as the years 2005-2008, which would be the term of
the future agreement. In its next issue, the IAFF asked: "Whether the contract should
continue to include impasse procedure language inconsistent with the statutory command." 

 In reviewing the issues for arbitration, we conclude that the IAFF's written statement
of issues contains no written notice of any contention that section 3(c) (other Texas
firefighters) should not be applied as a criteria for the compensation to be awarded for the
term under consideration. Instead, the issue on which the IAFF provided notice concerned
whether the future contract's terms "should continue to include impasse procedure language
inconsistent with the statutory command[.]" 

 Generally, subject to our later discussion, whether an existing contract term should
be included in a new contract would be an issue on which the parties could engage in
collective bargaining. With respect to the prospective 2005-2008 contract and whether it
would include Article XXXIV 3(c)'s criteria, the IAFF's notice is sufficient. However, with
respect to a claim that Article XXXIV 3(c)'s criteria should not be applied by the arbitrators 
in this arbitration proceeding, the notice is deficient. 

 Even were we to conclude that the IAFF's statement of the issue was broad enough
to create some ambiguity over whether notice was provided (although we do not), the rule
of ejusdem generis provides that "when words of a general nature are used in connection
with the designation of particular objects or classes of persons or things, the meaning of the
general words will be restricted to the particular designation." Hilco Elec. Coop. v.
Midlothian Butane Gas Co., Inc., 111 S.W.3d 75, 81 (Tex. 2003). By referring to the
contract years in issue one as being for the term 2005-2008, it is reasonable to conclude that
"the contract" referenced in issue two is likewise a reference to the new contract to begin in
2005.

 In this case, the IAFF does not contend that the City waived the contract's written
notice requirement, nor does the IAFF identify any amended pleading in which it notified the
City of a claim that section 3(c) should not be applied in determining the compensation
package of the firefighters for the contract term in issue. In determining the effect of the
absence of the required contractual notice, we observe that contractual provisions must be
considered with reference to the entire instrument. J.M. Davidson, Inc. v. Webster, 128
S.W.3d 223, 229 (Tex. 2003). The provision requiring written notice of issues to be
arbitrated is clear, specific, and unambiguous. In light of the absence of FPERA guidelines 
about the notice a party must provide on disputed issues, parties to FPERA agreements likely
consider it wise to provide a contractual notice requirement so they will know what issues
are to be arbitrated. 

 When a contract provides a written notice provision, and an arbitration panel 
unilaterally decides issues that were not submitted, the arbitrators' action effectively deprives
the parties of their contractually required notice. On the record before us, we conclude that
the City did not receive the notice to which it was entitled. Therefore, the application of
section 3(c)'s criteria to the compensation award was not an issue submitted by the parties
to arbitration. In deciding an issue that was not submitted to it, the arbitrators exceeded the
scope of authority delegated to them to arbitrate disputes under the FPERA. See Tex. Loc.
Gov't Code Ann. § 174.156 (Vernon 1999). 

 Additionally, the contract limited the arbitrators to deciding "matters which the parties
have been unable to resolve through collective bargaining." Whether wage rates of other
Texas full-time certified firefighters were factors to be considered in determining a
compensation award was a question already resolved for the 2005 contract; the 2001 contract
expressly provided that the wages of other Texas full-time certified firefighters could be
considered. Thus, the criteria for determining the firefighters' compensation award had
already been agreed to by the parties. It was not an issue in dispute. While the IAFF
contended that the criteria should not continue to be included in new contracts, that issue is
different from whether parties had previously agreed under the 2001 contract's criteria that
the wages of other firefighters would be a factor to consider in determining the compensation
award for the 2005 contract term under consideration. The parties had agreed on that issue,
as Article XXXIV's section 3(c)'s presence in the 2001 contract was not disputed.

 It has long been settled that an arbitration award that exceeds the authority conferred
by the arbitration agreement is void. Fortune v. Killebrew, 86 Tex. 172, 23 S.W. 976, 978
(1893) ("An award in excess of the authority of the arbitrators is void, unless the matter in
excess is such as may be disregarded, and a valid award be left standing.") In Gulf Oil Corp.
v. Guidry, 327 S.W.2d 406, 408 (Tex. 1959), the Texas Supreme Court held that Fortune
"settles the law in this state to be that when arbitrators attempt to determine matters not
submitted to their determination, as to such matters the award is void." In Guidry, the
Supreme Court further explained that "the authority of arbitrators is derived from the
arbitration agreement and is limited to a decision of the matters submitted therein either
expressly or by necessary implication." Id. "Arbitrators therefore exceed their authority
when they decide matters not properly before them." Barsness v. Scott, 126 S.W.3d 232, 241
(Tex. App.-San Antonio 2003, pet. denied). 

 By altering binding terms of the existing contract, as contrasted to forging new terms
of a prospective contract, the panel went beyond its authority. Generally, we do not believe
the FPERA's arbitration provision authorizes arbitrators to retroactively alter the terms of an
existing contract. In discussing the appropriate role of the arbitrator, the United States
Supreme Court has said: 

 [A]n arbitrator is confined to interpretation and application of the collective
bargaining agreement; he does not sit to dispense his own brand of industrial
justice. He may of course look for guidance from many sources, yet his award
is legitimate only so long as it draws its essence from the collective bargaining
agreement. When the arbitrator's words manifest an infidelity to this
obligation, courts have no choice but to refuse enforcement of the award.


United Steelworkers of Am. v. Enter. Wheel & Car Corp., 363 U.S. 593, 597, 80 S.Ct. 1358,
4 L.Ed.2d 1424 (1960).

 Because the parties had agreed in their contract to allow wages of other Texas
firefighters to be considered, we conclude that whether Article XXXIV section 3(c) of the
2001 contract could be considered in setting the compensation award for the 2005-2008 term
was not an issue in dispute. As previously stated, the arbitrators, by deciding to ignore
section 3(c), considered an issue that had already been resolved. By doing so, the panel
exceeded its authority.

 Finally, we also conclude that the parties did not agree to arbitrate disputes without
the panel's application of the agreed criteria to the award. Whether the agreement
encompasses the claims raised is an issue of law. See In re D. Wilson Constr. Co., 196
S.W.3d 774, 781 (Tex. 2006). Generally, in deciding the meaning of contract terms that
contain an arbitration clause, courts apply ordinary state law rules of contract construction.
Webster, 128 S.W.3d 227-28.

 The section of the contract that established the criteria to apply regarding the
firefighters' compensation package is found within the contract's arbitration provision for
arbitrating compensation issues. Because the challenged criteria under which the parties
agreed to arbitrate is found in the same section of the contract that relates to the agreement
to arbitrate, we conclude that the arbitration agreement was conditional on the arbitrators'
following the parties' agreed criteria. We conclude that there was no agreement to arbitrate
absent the application of the agreed criteria.

 If arbitrators had the authority to decide what portions of the arbitration clause are
enforceable, they could effectively grant themselves the power to compel parties to arbitrate
claims upon which there was no agreement to arbitrate. We do not believe that arbitrators
have such power under the FPERA, because the statute "does not require compulsory
arbitration." Tex. Loc. Gov't Code Ann. § 174.163 (Vernon 1999). Thus, the ambit of
what the parties agreed to arbitrate is a matter of their agreement, and their agreement was
conditional on the arbitrators' application of the agreed criteria. 

 In other words, whether the asserted invalidity of section (3)(c) affects the parties'
agreement to arbitrate in the first instance depends upon whether the allegedly invalid criteria
was an independent or a mutually dependent promise. See Hanks v. GAB Bus. Serv., Inc.,
644 S.W.2d 707, 708 (Tex. 1982). This question is determined by the intent of the parties
at the time the contract was formed, as evidenced by the language of the contract. Greenstein
v. Simpson, 660 S.W.2d 155, 160 (Tex. App.-Waco 1983, writ ref'd n.r.e.) (citing Nutt v.
Members Mut. Ins. Co., 474 S.W.2d 575, 577-78 (Tex. Civ. App.-Dallas 1971, writ ref'd
n.r.e.)). The test is whether or not the parties would have entered into the agreement absent
the unenforceable part. Rogers v. Wolfson, 763 S.W.2d 922, 925 (Tex. App.-Dallas 1989,
writ denied). Nevertheless, 

 an agreement containing more than one promise is not necessarily rendered
invalid by the illegality of one of the promises. In such a case, the invalid
provisions may be severed and the valid portions of the agreement upheld
provided the invalid provision does not constitute the main or essential purpose
of the agreement. 


Williams v. Williams, 569 S.W.2d 867, 871 (Tex. 1978). The issue of severability is a
question of law. John R. Ray & Sons, Inc. v. Stroman, 923 S.W.2d 80, 86 (Tex. App.-
Houston [14th Dist.] 1996, writ denied); see also Rogers, 763 S.W.2d 922, 925-26. 

 The criteria for determining wages is contained in the same article as the arbitration
agreement. This placement provides strong evidence that the parties reasonably expected the
arbitrators to consider the criteria in determining a compensation award. We conclude that
the promise to arbitrate in article XXXIV of the contract is a mutual condition dependent on
the arbitration panel's application of criteria that included article XXXIV section 3(c). 

 The existence of the severability clause in the contract does not change our conclusion
that the clauses are mutually dependent promises. The severability clause reads: 

 If any article or section of this agreement or any provision should be held
invalid by operation of law, or by any tribunal of competent jurisdiction, or if
compliance with or enforcement of any article or section should be restrained
by such tribunal pending final determination as to its validity, the remainder
of this agreement shall remain in full force and effect and shall not be affected
thereby. 


Nevertheless, a severability clause does not transmute an otherwise dependent promise into
one that is independent and divisible. See Patrizi v. McAninch, 153 Tex. 389, 269 S.W.2d
343, 348-349 (1954). 

 We conclude that a promise to arbitrate under certain conditions is not a promise to
arbitrate if those conditions are removed. As a result, we hold that if Article XXXIV's
criteria is unenforceable (an issue we do not reach), then the dependent promise to arbitrate
would also be unenforceable. By construing the contract in a way that modified the scope
of the parties' agreement to arbitrate, the arbitrators exceeded their authority. 

Issues Not Reached


 We expressly do not address several of the issues raised by the parties in their briefs. 
Because we resolve the dispute on the question of whether the arbitration panel exceeded its
authority, it is unnecessary that we reach whether the FPERA permits or prohibits contracts
that allow consideration of the compensation or conditions of employment of other public
employees. See Tex. Loc. Gov't Code Ann. §§ 174.021, 174.022, 174.156 (Vernon 1999). 
Should the parties choose to do so, they may perfect that issue for consideration by the
courts. 

 In its brief, the City asks that we reverse the trial court's judgment based on twelve
additional issues. The City's additional issues range from a procedural challenge to a
constitutional argument that the retroactive nature of an award for back-pay violates the
Texas Constitution. We are mindful that generally, "we only decide constitutional questions
when we cannot resolve issues on nonconstitutional grounds." In re B.L.D., 113 S.W.3d 340,
349 (Tex. 2003). Additionally, we are not required to resolve issues that would give the City
no greater relief than the relief we have granted on issue four. See Tex. R. App. P. 47.1. As
a result, we do not address the City's remaining issues. See id. 

Relief Granted


 For the reasons stated, we conclude that the arbitration panel exceeded its authority
in several respects. It arbitrated an issue on which the City was not given written notice as
required by the parties' contract. It arbitrated an issue that had been settled previously by
collective bargaining and which was not an issue in dispute. It proceeded to arbitrate while
refusing to apply the criteria under which the parties had agreed to arbitration in the first
place. 

 Where an arbitration panel exceeds its authority by deciding issues not submitted to
it, the Texas Supreme Court has declared that the arbitration award, as to such matters, is
void. Guidry, 327 S.W.2d at 408. We believe the rule applies to each of the reasons the
arbitration panel exceeded its authority here. Thus, the appropriate remedy here is to reverse
the judgment in its entirety, and render judgment that the IAFF take nothing, without
prejudice, however, to such rights as the IAFF may have, if any, to further arbitration under
the governing contract. Guidry, 327 S.W.2d at 411.

 REVERSED, ARBITRATION AWARD VACATED, DISMISSED WITHOUT
PREJUDICE. 

 ____________________________

 HOLLIS HORTON

 Justice


Submitted on September 20, 2007

Opinion Delivered November 8, 2007

Before Gaultney, Kreger, and Horton, JJ.