**Affirmed and Opinion Filed October 29, 2013.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-11-01471-CV

**ANDREW B. SMALL, III, Appellant**

**V.**

**PARKER HEALTHCARE MANAGEMENT ORGANIZATION, INC., AND JAMES W. PARKER AND JOHN S. PARKER D/B/A PARKER CHIROPRACTIC CLINIC,**
**Appellees**

**On Appeal from the 191st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-07-11449-J**

## MEMORANDUM OPINION

Before Justices FitzGerald, Francis, and Myers
Opinion by Justice Francis

In this business dispute, Andrew B. Small, III appeals the trial court's take-nothing judgment on his claims for breach of contract, breach of fiduciary duty, fraud, and conversion against appellees Parker Healthcare Management Organization, Inc., and James W. Parker and John S. Parker d/b/a Parker Chiropractic Clinic. In six issues, appellant generally complains the trial court erred by concluding the parties' professional association violated the Texas Medical Practice Act, by denying recovery when the parties were not *in pari delicto*, by considering the illegality defense when it was not pleaded, and by failing to apply a severability provision. Having reviewed the record, we conclude Small's issues are without merit and affirm the trial court's judgment.

Small is a medical doctor licensed in Texas; brothers James and John Parker are chiropractors. In 2001, the Parkers were looking to associate with a medical doctor, believing such an arrangement would improve their abilities to generate revenues for their chiropractic clinic. The Parkers had been actively involved in attempting to change legislation precluding associations between physicians and non-physicians and had been incorrectly advised by their attorney that such a change had been enacted. After meeting with several doctors, they decided to hire Small who would see patients referred to him by the Parkers' chiropractic clinic. According to James, he had an extensive discussion with Small regarding what they "expected of him" and what they "wanted the relationship to be."

The men formed a professional association, Parker Healthcare, P.A. The Articles of Association, signed by all three men, were filed with the Texas Secretary of State in September.[1] James and John Parker and Small were identified as the Association's original members. Each testified at trial that ownership was 50 percent to Small and 25 percent to each of the Parker brothers. The stated purpose of the Association was to

> associate the practice of health care providers for the purpose of engaging in the practice of medicine, in all of its branches, to encourage scientific study, to promote investigation in medical research, to promote better business relations within the health care community, to furnish related laboratory, clinical, and diagnostic services, and to own, lease and hold such real and personal property as will be useful or necessary to the successful operation of the medical and alternate health care practice . . . .

After its formation, the Association executed several documents, including employment agreements with the Parkers and a Physician Consulting Agreement with Small. All of the documents were signed by James on behalf of the Association. Under the consulting agreement, Small was retained as an independent contractor to provide professional services with

---

[1] Attorney Larry Laurent testified he and others believed the law had been amended in the 2001 legislative session to allow chiropractors to co-own a professional association with a physician. He prepared the Articles of Association for Parker Healthcare, P.A. and filed them with the Secretary of State's Office, which accepted them. Laurent said he learned the law had not changed when he attempted to file articles of association for another client consisting of a physician and a chiropractor and that filing was rejected.

compensation of $65 per hour and discretionary bonus payments "based upon the value of [Small's] services to [the] Association." (Small was later made an employee.) Small agreed all billing and collecting functions for his services would be performed by the Association or under an agreement with Parker Healthcare Management Organization, Inc., a corporation owned by James and John.

In addition to the employment and consulting agreements, the Association entered an agreement with PHMO to manage the affairs of the Association. Under the agreement, PHMO was to provide the Association with supplies, non-provider support personnel, management and financial support, and marketing and advisory services. In return, PHMO earned a management fee of cost plus 15 percent for facilities and services and 35 percent of collected revenues. The undisputed evidence at trial established that all income generated for chiropractic work, physical therapy services, and Small's treatment of patients went into the Association checking account, and the PHMO paid all bills and salaries.

The Association operated until sometime in 2003. During that time, Small was paid his salary but never received a bonus. He testified he received Schedule K-1s for federal income tax purposes that showed he was a 50 percent owner in the Association. He said he never received any financial reports or summaries on the Association and never asked for an accounting. Although he testified he was unaware there was a problem with him associating with two non-doctors, an email was admitted into evidence in which James discusses with Small the "MD ownership issues."

The relationship between the three men ended in 2004. Tax documents showed the majority of the Association's earnings were paid for management fees. Ultimately, Small sued appellees, alleging the Parkers mismanaged the Association by directing its earnings to the

PHMO to their own financial benefit and to Small's detriment. In addition, he sought a full accounting to determine the profits of the Association.

After hearing the evidence, the trial court found (1) Small and the Parker brothers formed a business entity known as Parker Healthcare, P.A.; (2) Small entered an agreement with the Association to provide medical services for the Association; (3) Small provided medical services under the agreement; (4) Small was compensated for the medical services rendered under the agreement; (5) the Association was an entity established to provide health care to patients; and (6) at all relevant times to the issues in this case Small was a physician licensed to practice medicine in Texas; the Parker brothers were chiropractors and were not physicians licensed to practice medicine in Texas.

The trial court made the following conclusions of law: (1) Small was fully compensated for his services under the only written contract which he entered and (2) the entity under which Small and the Parkers operated "was in violation of the Texas Medical Practice Act because it consisted of both a physician and non-physicians and was therefore illegal." The court then determined the contract under which Small sought redress was unenforceable and left "the parties where it found them."

On appeal, Small challenges the trial court's conclusion that the Association violated the Medical Practice Act. He argues the evidence is legally and factually insufficient to support a finding that the Parkers owned any interest in Parker Healthcare, P.A. and that "the undisputed evidence established only a licensed physician owned the entity and practiced medicine."

In an appeal from a bench trial, the trial court's findings of fact have the same weight as a jury verdict. *Principal Life Ins. Co. v. Revalen Dev. LLC*, 358 S.W.3d 451, 454 (Tex. App.— Dallas 2012, pet. ref'd). Therefore, we review a trial court's findings of fact under the same

sufficiency standards we use when determining if sufficient evidence exists to support an answer to a jury question. *Id.*

In reviewing the legal sufficiency of the evidence, we credit evidence that supports the finding if a reasonable fact finder could, and disregard contrary evidence unless a reasonable fact finder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). Anything more than a "scintilla of evidence" is legally sufficient to support the finding. *Cont'l Coffee Prods., Co. v. Cazarez*, 937 S.W.2d 444, 450 (Tex. 1996). To be more than a scintilla, the evidence must rise "to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 25 (Tex. 1994). In reviewing a factual sufficiency challenge, we consider and weigh all the evidence in support of and contrary to the finding and will set aside the verdict "only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Cain v. Bain*, 709 S.W.2d 175, 176 (1986) (per curiam).

We may not substitute our judgment for the fact finder's, even if we would reach a different conclusion after reviewing the evidence. *Ashcraft v. Lookadoo*, 952 S.W.2d 907, 910 (Tex. App.—Dallas 1997, pet. ref'd). The trial court is the sole judge of the witnesses' credibility and the weight to be given their testimony. *Id.* In contrast, when reviewing the trial court's legal conclusions, we evaluate them independently and thus review the legal conclusions drawn from the facts found solely to determine their correctness. *Id.*

A contract to do a thing which cannot be performed without violation of the law is void. *See Lewis v. Davis*, 145 Tex. 468, 472, 199 S.W.2d 146, 148–49 (1947). Courts generally will not enforce illegal transactions. *Plumlee v. Paddock*, 832 S.W.2d 757, 759 (Tex. App.—Fort Worth 1992, writ denied). The purpose behind this rule is not to protect or punish either party to the contract, but to benefit and protect the public. *Id.* In Texas, parties to a contract are

presumed to be knowledgeable of the law. *Id.* Accordingly, if a court finds a transaction is illegal, it will generally leave the parties as it finds them. *Id.*

Chapter 162 of the Texas Medical Practice Act addresses the regulation of the practice of medicine. *See* TEX. OCC. CODE ANN. §§ 162.001–.206 (West 2012). Subchapter B of chapter 162 governs the formation of jointly owned entities between physicians and non-physicians. *See id.* § 162.051–.053. *Id.* Section 162.051 provides that, except in circumstances not applicable here, a physician and an optometrist or therapeutic optometrist may, for certain purposes set out in the statute, organize, jointly own, and manage any legal entity, including a partnership, a limited partnership, and a limited liability company. *See* Act of May 24, 1999, 76th Leg., R.S., ch. 948, § 1, 1999 Tex. Gen. Laws 3685, 3685 (current version at TEX. OCC. CODE ANN. § 162.051(a)(1-3) (West 2012)). Such an entity may (1) own real property, other physical facilities, or equipment for the delivery of health care or management; (2) lease, rent, or otherwise acquire the use of real property, other physical facilities, or equipment for the delivery of health care services or management; or (3) employ or otherwise use a person who is not a physician, optometrist, or therapeutic optometrist for the delivery of health care services or management. *Id.* (current version at § 162.051(b)(1-3)). Only a physician, optometrist, or therapeutic optometrist may own an interest in an entity authorized under subsection (a). *Id.* (current version at § 162.051(c)). The statute does not authorize a physician and chiropractor to jointly own such an entity.

Here, relying on documents submitted as evidence, Small argues he solely owned Parker Healthcare, P.A. Specifically, he relies on the following: (1) article 9 of the Articles of Association, which provides that no share of stock of the Association shall be issued to any person who is not licensed to engage in the practice of medicine in the State of Texas; (2) the Association's bylaws, which require all stockholders to be licensed to practice medicine in

Texas; and (3) the Minutes of the Initial Meeting of the Shareholders of Parker Healthcare, P.A., and the Minutes of the Organizational Meeting of the Directors of Parker Healthcare, P.A., both of which he said reflects that he is the only shareholder and officer of the Association.

Small, however, ignores his own testimony that it was his understanding from the beginning that the Association "would be 50/50 ownership; 50 percent for me; 25 percent for each of the Parkers" and that he "had no problem with that." Likewise, the Parkers both testified to the same ownership split. This testimony is supported by the schedule K-1s admitted into evidence showing Small owned 50 percent and the Parkers each owned 25 percent of the Association.

In addition to the above, the Articles of Association, signed by all the parties, showed Small and the Parkers were members. Article 8, entitled "Capitalization," provides that the Board of Directors shall determine the consideration to be received for each share of ownership in the Association. Further, in contrast to the article relied on by Small, it provides, that "[n]one of the shares of the Association shall be issued to anyone other than an individual, duly licensed to practice medicine *or chiropractic* in the State of Texas." (Emphasis added.) As for Small's reliance on the bylaws and minutes, James testified those documents were merely draft instruments that had not been formalized.[2]

Finally, the evidence showed that while Small was a consultant (and then later an employee) of Parker Healthcare, P.A., all services for medical, chiropractic, or physical therapy treatment were billed through the Association, and all monies collected were deposited into the Association's bank account. Given this evidence, we cannot conclude the evidence was legally or factually insufficient to support a finding that Small and the Parkers jointly owned the

---

[2] The record contains two "versions" of the bylaws, A and B. Page 26 of A is blank except for the signature of Small as "Director, Chairman." Page 26 of B contains a Certificate of Secretary stating, "We, the undersigned, hereby certify that the foregoing Bylaws were adopted by action of the Directors of the Association on the 15th day of September, 2001." The certificate is followed by a date and a blank for the president to sign. The document is not signed. Likewise, neither set of minutes is signed.

Association. Further, this evidence supports the trial court's conclusion that the entity violated the Texas Medical Practice Act.

Even if the entity is illegal, Small argues the trial court erred by denying him any recovery because "the parties were not *in pari delicto* and the denial of recovery for [Small] improperly rewards [a]ppellees with the fruits of unjust enrichment based upon a proposition which is against public policy."

The rule that a court will not entertain a suit growing out of an illegal transaction does not always apply where the parties are not *in pari delicto*, or equally blameworthy. *See Plumlee,* 832 S.W.2d at 759. In certain instances, the party least culpable may be entitled to recover. *Id*. Such cases, however, depend upon the knowledge of peculiar facts by the defendant, not known by the party seeking to enforce the contract; in other words, a mistake of fact. *Id*. (citing *Graham v. Dean*, 144 Tex. 61, 188 S.W.2d 372, 373 (1945); *Oakes v. Guarantee Ins. Co.*, 573 S.W.2d 899, 902 (Tex. Civ. App.—Eastland 1978, writ ref'd n.r.e.)). For example, in *Graham*, the plaintiffs hired the defendant to haul machinery without knowing the defendant did not have the proper permit. 188 S.W.2d at 372. The defendant negligently damaged the machine while unloading it, and the plaintiffs sued. The defendant alleged the illegality of the contract to avoid liability. *Id*.

The court concluded the parties were not *in pari delicto* because the illegality of the transaction depended on peculiar facts known only to the defendant. *Id*. at 373. The court explained that the transaction was not necessarily an illegal one because the defendant could have had a permit. The plaintiffs had no intention of violating the law; they had no knowledge of the fact that rendered the contract illegal (lack of a permit), yet the defendant knew he would have to violate the law if he executed the contract. *Id*. Thus, the plaintiffs were operating under a mistake of fact. *See id*.

Unlike *Graham*, this case does not involve a mistake of fact. The evidence showed the parties were all aware they were forming an association between a physician and two non-physicians, and all operated under the same erroneous legal advice when forming the Association. Although Small argues he "never intended to violate any statute" and "relied completely on the advice and representations of [a]ppellees and their attorney" assuring him the law had been amended, his belief that the association was legal is simply not relevant. *Plumlee*, 832 S.W.2d at 759. Furthermore, his argument that "the entire process and structure of the relationship was planned, designed and implemented by appellees and their attorney" does not demand a different result. James Parker testified he had a lengthy meeting with Small, in the beginning, regarding what he "expected of him" and what he "wanted the relationship to be." James said that during that "hours long" meeting, they discussed "everything." He testified Small agreed to form the Association and agreed to the structure and arrangement. If Small had not agreed, James said he would have selected one of the other physician candidates. Although Small's testimony differed from James's, the trial court was in the best position to judge the credibility of the witnesses. Moreover, the evidence showed that Small did nothing during the years he was associated with the Parkers to obtain any information regarding the Association. He received no financial statements or reports, did not ask for any, and did not demand an accounting. Courts have required parties who wish to recover on an illegal contract to prove their case without reliance on their own illegal act. *Id.* Small cannot show his right to recovery in this case without proving his own illegal conduct by owning an association with two non-physicians. We overrule issues one, two, three, and six.

In his fourth issue, Small asserts the trial court erred in concluding the Texas Medical Practice Act was violated because appellees failed to plead illegality as an affirmative defense as

required by Texas Rule of Civil Procedure 94. We agree that appellees did not plead illegality and raised the issue for the first time in opening statements.

Failure to plead illegality of a contract ordinarily constitutes a waiver of the defense. *Flynn Bros., Inc. v. First Med. Assocs.*, 715 S.W.2d 782, 784 (Tex. App.—Dallas 1986, writ ref'd n.r.e.). But, where the illegality of the contract appears on the face of the contract, or the illegality appears from the evidence necessary to prove the contract, an affirmative pleading of illegality is unnecessary and the question can be raised at any stage of the proceeding, or may be raised by the appellate court sua sponte. *Id*.

Here, the Articles of Association state its purpose, in part, is to "associate the practice of health care providers for the purpose of engaging in the practice of medicine. . . ." The Articles show the Parkers and Small are the members of the Association. Article 8 provides that shares of the Association can be issued to an individual duly licensed to practice medicine or chiropractic in Texas. The Articles are signed by each of the Parkers, as doctors of chiropractic, and Small, as a medical doctor. We conclude the illegality of the transaction appears on the face of the Articles of Association; consequently, appellees did not waive it by failing to plead it. We overrule the fourth issue.

In his fifth issue, Small argues the trial court erred in failing to uphold the legality of the Association by applying the severability provision of the Articles. He argues the trial court should have disregarded provisions making the Parkers members of the Association.

Article 15 provides: "If any phrase, clause, sentence, paragraph, or provision of these Articles of Association is held to be void or illegal, it shall not impair or affect the balance of these Articles, and the undersigned original members of the Association do hereby declare that they would have signed and executed the balance of these Articles without such void or illegal provision."

–10–

The doctrine of severability is applied in situations where the original consideration of the contract is legal and incidental promises within the contract are found to be illegal. *See Williams v. Williams*, 569 S.W.2d 867, 871 (Tex. 1978). In such a case, the invalid provisions may be severed and the valid portion of the agreement upheld. *Rogers v. Wolfson*, 763 S.W.2d 922, 925 (Tex. App.—Dallas 1989, writ denied). On this point, the issue is whether the parties would have entered the agreement absent the illegal parts. *Id*.

We cannot conclude that the provision making the Parkers members of the Association or the provision providing that shares could be issued to both physicians and chiropractors were "incidental promises." To the contrary, the parties' entire agreement and relationship turned on an illegal arrangement—formation of a health care association in which the members included a physician and two chiropractors who all shared ownership in the association. We overrule the fifth issue.

We affirm the trial court's judgment.

/Molly Francis/
MOLLY FRANCIS
111471F.P05                                                JUSTICE

–11–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ANDREW B. SMALL, III, Appellant

No. 05-11-01471-CV      V.

PARKER HEALTHCARE
MANAGEMENT ORGANIZATION, INC.,
AND JAMES W. PARKER AND JOHN S.
PARKER D/B/A PARKER
CHIROPRACTIC CLINIC, Appellees

On Appeal from the 191st Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-07-11449-J.
Opinion delivered by Justice Francis;
Justices FitzGerald and Myers participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellees PARKER HEALTHCARE MANAGEMENT ORGANIZATION, INC., AND JAMES W. PARKER AND JOHN S. PARKER D/B/A PARKER CHIROPRACTIC CLINIC recover their costs of this appeal from appellant ANDREW B. SMALL, III.

Judgment entered this 29th day of October, 2013.

/Molly Francis/
MOLLY FRANCIS
JUSTICE

–12–