The **CITY OF BEAUMONT**, Appellant,

v.

**INTERNATIONAL ASSOCIATION OF FIREFIGHTERS, LOCAL UNION NO. 399**, Appellee.

**No. 09–06–481 CV.**

Court of Appeals of Texas, Beaumont.

Submitted Sept. 20, 2007.

Decided Nov. 8, 2007.

Elizabeth B. Pratt, Patricia D. Chamblin, John J. Durkay, Mehaffy Weber, P.C., Tyrone E. Cooper, Beaumont, for appellant.

John Werner, Reaud, Morgan & Quinn, L.L.P., Beaumont, for appellee.

Before GAULTNEY, KREGER, and HORTON, JJ.

## OPINION

HOLLIS HORTON, Justice.

This case arises from the arbitration of a compensation dispute between the City of Beaumont ("City") and the International Association of Firefighters, Local Union No. 399 ("IAFF"). The arbitration was conducted pursuant to the Fire and Police Employee Relations Act ("FPERA"). *See* TEX. LOC. GOV'T CODE ANN. §§ 174.001–.253 (Vernon 1999 & Supp.2006). In this appeal, we hold that the arbitration panel exceeded its authority by considering an issue for which proper notice was not given, by arbitrating an issue that was not in dispute, and by proceeding to arbitrate without enforcing all of the provisions which the parties had agreed would apply to their dispute. Accordingly, the judgment entered by the trial court must be set aside. We render judgment that the IAFF take nothing by its suit, without prejudice, however, to such rights it may

have, if any, to initiate further arbitration proceedings under the governing contract.

*Procedural Background and
The Arbitration Award*

The terms of the agreement governing the present dispute between the IAFF and the City are contained within a collective bargaining agreement dated effective October 1, 2001 ("the 2001 contract"). Under that contract, the parties agreed to commence collective bargaining on a new contract by no later than July 1, 2005. The 2001 contract contains an "Evergreen Clause," in which the parties' acknowledged the contract's four-year term, and further agreed "that [the contract] shall remain in full force until replaced by a successor agreement."

The impasse procedure, Article XXXIV of the 2001 contract, contains the parties' agreement to arbitrate compensation disputes. It required "written notice to the other party containing specifications of the issue or issues in dispute." With respect to issues submitted to arbitration, Article XXXIV's impasse procedure further provided:

3. In making its decision, the Arbitration Panel may consider only the following:

a) The requirements of Section 174.021, Local Government Code.

b) The total compensation, including wages and benefits, and conditions of employment provided by the EMPLOYER to members of the bargaining unit.

c) The total compensation and terms and conditions of employment of State Civil Service certified, full-time firefighters in all Texas cities.

d) The rate of increase or decrease in the cost of living for the Houston area determined by the Consumer Price Index for the period beginning with the effective date of the current contract and ending with the most recent

e) After all other possible considerations of comparison, the arbitration panel may give consideration to revenues available to the employer.

4. Information concerning hours of work and insurance benefits and costs may be considered by the Arbitration Panel for purposes of determining total compensation and terms and conditions of employment but may not be used specifically to support an amendment by the EMPLOYER of the hours of work of Beaumont firefighters or the coverage and costs of insurance benefits for such firefighters.

The parties commenced negotiations for a new contract on June 3, 2005. By August 2005, the parties had reached an impasse, and the IAFF requested arbitration. On March 8, 2006, the IAFF notified the arbitrators of its issues for arbitration, as follows:

1) The appropriate wage increase for the contract years 2005–2008 (Article XXX and Addendum A);

2) Whether the contract should continue to include impasse procedure language inconsistent with the statutory command (Article XXXIV);

3) Whether the contract should be modified so that negotiations commence on February 1 to allow for timely resolution of contract language by agreement or arbitration (Article XXXV);

4) Whether retirees should pay the same health insurance premiums as active members (Article XXXI);

5) Whether vacations and holidays shall be awarded to members in the same

way as civilian employees, pursuant to statute (Article XIII);

6) Whether the pension contribution of the City should be increased, since members do not participate in Social Security Retirement benefits and the City does not make contributions on their behalf in that regard (Article XV);

7) Whether various provisions for "extra" pay should be increased to reflect current economic realities (Article XVII–Educational Incentive Pay; Article XIX–Certification Pay; Article XX–Skills Incentive Pay; Article XXI–Clothing Maintenance; Article XXIX–Standby Pay)[;]

8) Whether Training and Arson/Prevention Division members shall be covered by a set work schedule as had been in effect January 1, 2005 (four days per week, ten hours per day) (Article XXIII); [and]

9) Whether members will be allowed to participate in IAFF "457" Retirement Plans and IAFF "Retiree Savings Health Plans (flex plan)" (New Article).

Subsequently, during March and July 2006, the arbitration panel heard evidence regarding the parties' dispute. The panel issued its decision on July 21, 2006. The panel, consisting of three members, voted two-to-one in favor of the award. In explaining the majority panel's reasoning, the author of the award stated: "I shall not apply the requirement set forth in Article XXXIV, Section 3(c) of the expiring Agreement to the determinations reached herein." The award further explained that "this Board is not bound by provisions which are contrary to statute, even if the Employer wants them applied and the Union is prepared to accept their applicability in this proceeding to assure it does not lose on another, arguably more important

issue." Thus, in reaching its decision on the IAFF's compensation award, the panel's award reflects that the arbitration panel did not follow the criteria to which the parties had agreed under Article XXXIV of their 2001 contract.

*Judicial Review*

■ FPERA awards are subject to judicial review. The FPERA states:

(a) An award of an arbitration board may be reviewed by a district court for the judicial district in which the municipality is located only on the grounds that:

(1) the arbitration board was without jurisdiction;

(2) the arbitration board exceeded its jurisdiction;

(3) the order is not supported by competent, material, and substantial evidence on the whole record; or

(4) the order was obtained by fraud, collusion, or similar unlawful means.

TEX. LOC. GOV'T CODE ANN. § 174.253(a) (Vernon 1999). The district court entered its judgment confirming the arbitration award on October 23, 2006. We review a trial court's decision to affirm or vacate an arbitration award de novo. *Babcock & Wilcox Co. v. PMAC, Ltd.*, 863 S.W.2d 225, 229 (Tex.App.-Houston [14th Dist.] 1993, writ denied).

*Jurisdiction of Arbitration Panel*

■ In issue four of its brief, the City alleges that the trial court should not have confirmed the award because the arbitrators exceeded their authority. The scope of an arbitrator's authority to adjudicate a dispute is determined by the scope of the controlling arbitration clause. A party seeking to compel arbitration must establish the existence of an arbitration agreement and show that the claims raised fall

within the scope of that agreement. *See Cantella & Co., Inc. v. Goodwin,* 924 S.W.2d 943, 944 (Tex.1996). Whether a given issue is within the scope of the issues submitted to an arbitrator is a question of law. *Babcock,* 863 S.W.2d at 229–230.

The agreement to arbitrate in the contract before us requires that "both parties shall submit all issues in dispute to arbitration." The contract defines the disputed issues as "all matters which the parties have been unable to resolve through collective bargaining." The contract further requires each party to provide "written notice to the other party containing specifications of the issue or issues in dispute[.]" It appears that the parties' 2001 contract contemplated that written notice occur prior to the arbitration hearing.

■ The IAFF submitted a written notice defining the issues in dispute. In its first issue, the IAFF identified the contract years as the years 2005–2008, which would be the term of the future agreement. In its next issue, the IAFF asked: "Whether the contract should continue to include impasse procedure language inconsistent with the statutory command."

In reviewing the issues for arbitration, we conclude that the IAFF's written statement of issues contains no written notice of any contention that section 3(c) (other Texas firefighters) should not be applied as a criteria for the compensation to be awarded for the term under consideration. Instead, the issue on which the IAFF provided notice concerned whether the future contract's terms "should continue to include impasse procedure language inconsistent with the statutory command[.]"

Generally, subject to our later discussion, whether an existing contract term should be included in a new contract would be an issue on which the parties could engage in collective bargaining. With respect to the prospective 2005–2008 con-

tract and whether it would include Article XXXIV 3(c)'s criteria, the IAFF's notice is sufficient. However, with respect to a claim that Article XXXIV 3(c)'s criteria should not be applied by the arbitrators in this arbitration proceeding, the notice is deficient.

■ Even were we to conclude that the IAFF's statement of the issue was broad enough to create some ambiguity over whether notice was provided (although we do not), the rule of *ejusdem generis* provides that "when words of a general nature are used in connection with the designation of particular objects or classes of persons or things, the meaning of the general words will be restricted to the particular designation." *Hilco Elec. Coop. v. Midlothian Butane Gas Co., Inc.,* 111 S.W.3d 75, 81 (Tex.2003). By referring to the contract years in issue one as being for the term 2005–2008, it is reasonable to conclude that "the contract" referenced in issue two is likewise a reference to the new contract to begin in 2005.

■ In this case, the IAFF does not contend that the City waived the contract's written notice requirement, nor does the IAFF identify any amended pleading in which it notified the City of a claim that section 3(c) should not be applied in determining the compensation package of the firefighters for the contract term in issue. In determining the effect of the absence of the required contractual notice, we observe that contractual provisions must be considered with reference to the entire instrument. *J.M. Davidson, Inc. v. Webster,* 128 S.W.3d 223, 229 (Tex.2003). The provision requiring written notice of issues to be arbitrated is clear, specific, and unambiguous. In light of the absence of FPERA guidelines about the notice a party must provide on disputed issues, parties to FPERA agreements likely consider it wise

to provide a contractual notice requirement so they will know what issues are to be arbitrated.

When a contract provides a written notice provision, and an arbitration panel unilaterally decides issues that were not submitted, the arbitrators' action effectively deprives the parties of their contractually required notice. On the record before us, we conclude that the City did not receive the notice to which it was entitled. Therefore, the application of section 3(c)'s criteria to the compensation award was not an issue submitted by the parties to arbitration. In deciding an issue that was not submitted to it, the arbitrators exceeded the scope of authority delegated to them to arbitrate disputes under the FPERA. *See* TEX. LOC. GOV'T CODE ANN. § 174.156 (Vernon 1999).

Additionally, the contract limited the arbitrators to deciding "matters which the parties have been unable to resolve through collective bargaining." Whether wage rates of other Texas full-time certified firefighters were factors to be considered in determining a compensation award was a question already resolved for the 2005 contract; the 2001 contract expressly provided that the wages of other Texas full-time certified firefighters could be considered. Thus, the criteria for determining the firefighters' compensation award had already been agreed to by the parties. It was not an issue in dispute. While the IAFF contended that the criteria should not continue to be included in new contracts, that issue is different from whether parties had previously agreed under the 2001 contract's criteria that the wages of other firefighters would be a factor to consider in determining the compensation award for the 2005 contract term under consideration. The parties had agreed on that issue, as Article XXXIV's section

3(c)'s presence in the 2001 contract was not disputed.

■ It has long been settled that an arbitration award that exceeds the authority conferred by the arbitration agreement is void. *Fortune v. Killebrew*, 86 Tex. 172, 23 S.W. 976, 978 (1893) ("An award in excess of the authority of the arbitrators is void, unless the matter in excess is such as may be disregarded, and a valid award be left standing.") In *Gulf Oil Corp. v. Guidry*, 160 Tex. 139, 327 S.W.2d 406, 408 (1959), the Texas Supreme Court held that *Fortune* "settles the law in this state to be that when arbitrators attempt to determine matters not submitted to their determination, as to such matters the award is void." In *Guidry*, the Supreme Court further explained that "the authority of arbitrators is derived from the arbitration agreement and is limited to a decision of the matters submitted therein either expressly or by necessary implication." *Id.* "Arbitrators therefore exceed their authority when they decide matters not properly before them." *Barsness v. Scott*, 126 S.W.3d 232, 241 (Tex.App.-San Antonio 2003, pet. denied).

By altering binding terms of the existing contract, as contrasted to forging new terms of a prospective contract, the panel went beyond its authority. Generally, we do not believe the FPERA's arbitration provision authorizes arbitrators to retroactively alter the terms of an existing contract. In discussing the appropriate role of the arbitrator, the United States Supreme Court has said:

> [A]n arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining

agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award.

*United Steelworkers of Am. v. Enter. Wheel & Car Corp.,* 363 U.S. 593, 597, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

Because the parties had agreed in their contract to allow wages of other Texas firefighters to be considered, we conclude that whether Article XXXIV section 3(c) of the 2001 contract could be considered in setting the compensation award for the 2005–2008 term was not an issue in dispute. As previously stated, the arbitrators, by deciding to ignore section 3(c), considered an issue that had already been resolved. By doing so, the panel exceeded its authority.

■■■ Finally, we also conclude that the parties did not agree to arbitrate disputes without the panel's application of the agreed criteria to the award. Whether the agreement encompasses the claims raised is an issue of law. *See In re D. Wilson Constr. Co.,* 196 S.W.3d 774, 781 (Tex. 2006). Generally, in deciding the meaning of contract terms that contain an arbitration clause, courts apply ordinary state law rules of contract construction. *Webster,* 128 S.W.3d at 227–28.

The section of the contract that established the criteria to apply regarding the firefighters' compensation package is found within the contract's arbitration provision for arbitrating compensation issues. Because the challenged criteria under which the parties agreed to arbitrate is found in the same section of the contract that relates to the agreement to arbitrate, we conclude that the arbitration agreement was conditional on the arbitrators' following the parties' agreed criteria. We conclude that there was no agreement to arbitrate absent the application of the agreed criteria.

If arbitrators had the authority to decide what portions of the arbitration clause are enforceable, they could effectively grant themselves the power to compel parties to arbitrate claims upon which there was no agreement to arbitrate. We do not believe that arbitrators have such power under the FPERA, because the statute "does not require compulsory arbitration." TEX. LOC. GOV'T CODE ANN. § 174.163 (Vernon 1999). Thus, the ambit of what the parties agreed to arbitrate is a matter of their agreement, and their agreement was conditional on the arbitrators' application of the agreed criteria.

■■■ In other words, whether the asserted invalidity of section (3)(c) affects the parties' agreement to arbitrate in the first instance depends upon whether the allegedly invalid criteria was an independent or a mutually dependent promise. *See Hanks v. GAB Bus. Serv., Inc.,* 644 S.W.2d 707, 708 (Tex.1982). This question is determined by the intent of the parties at the time the contract was formed, as evidenced by the language of the contract. *Greenstein v. Simpson,* 660 S.W.2d 155, 160 (Tex.App.-Waco 1983, writ ref'd n.r.e.) (citing *Nutt v. Members Mut. Ins. Co.,* 474 S.W.2d 575, 577–78 (Tex.Civ.App.-Dallas 1971, writ ref'd n.r.e.)). The test is whether or not the parties would have entered into the agreement absent the unenforceable part. *Rogers v. Wolfson,* 763 S.W.2d 922, 925 (Tex.App.-Dallas 1989, writ denied). Nevertheless,

> an agreement containing more than one promise is not necessarily rendered invalid by the illegality of one of the promises. In such a case, the invalid provisions may be severed and the valid portions of the agreement upheld provided the invalid provision does not constitute the main or essential purpose of the agreement.

*Williams v. Williams,* 569 S.W.2d 867, 871 (Tex.1978). The issue of severability is a question of law. *John R. Ray & Sons, Inc. v. Stroman,* 923 S.W.2d 80, 86 (Tex. App.-Houston [14th Dist.] 1996, writ denied); *see also Rogers,* 763 S.W.2d 922, 925–26.

The criteria for determining wages is contained in the same article as the arbitration agreement. This placement provides strong evidence that the parties reasonably expected the arbitrators to consider the criteria in determining a compensation award. We conclude that the promise to arbitrate in article XXXIV of the contract is a mutual condition dependent on the arbitration panel's application of criteria that included article XXXIV section 3(c).

■ The existence of the severability clause in the contract does not change our conclusion that the clauses are mutually dependent promises. The severability clause reads:

> If any article or section of this agreement or any provision should be held invalid by operation of law, or by any tribunal of competent jurisdiction, or if compliance with or enforcement of any article or section should be restrained by such tribunal pending final determination as to its validity, the remainder of this agreement shall remain in full force and effect and shall not be affected thereby.

Nevertheless, a severability clause does not transmute an otherwise dependent promise into one that is independent and divisible. *See Patrizi v. McAninch,* 153 Tex. 389, 269 S.W.2d 343, 348–349 (1954).

We conclude that a promise to arbitrate under certain conditions is not a promise to arbitrate if those conditions are removed. As a result, we hold that if Article XXXIV's criteria is unenforceable (an issue we do not reach), then the dependent promise to arbitrate would also be unenforceable. By construing the contract in a way that modified the scope of the parties' agreement to arbitrate, the arbitrators exceeded their authority.

### Issues Not Reached

We expressly do not address several of the issues raised by the parties in their briefs. Because we resolve the dispute on the question of whether the arbitration panel exceeded its authority, it is unnecessary that we reach whether the FPERA permits or prohibits contracts that allow consideration of the compensation or conditions of employment of other public employees. *See* Tex. Loc. Gov't Code Ann. §§ 174.021, 174.022, 174.156 (Vernon 1999). Should the parties choose to do so, they may perfect that issue for consideration by the courts.

■ In its brief, the City asks that we reverse the trial court's judgment based on twelve additional issues. The City's additional issues range from a procedural challenge to a constitutional argument that the retroactive nature of an award for backpay violates the Texas Constitution. We are mindful that generally, "we only decide constitutional questions when we cannot resolve issues on nonconstitutional grounds." *In re B.L.D.,* 113 S.W.3d 340, 349 (Tex.2003). Additionally, we are not required to resolve issues that would give the City no greater relief than the relief we have granted on issue four. *See* Tex. R.App. P. 47.1. As a result, we do not address the City's remaining issues. *See id.*

### Relief Granted

For the reasons stated, we conclude that the arbitration panel exceeded its authority in several respects. It arbitrated an issue on which the City was not given

written notice as required by the parties' contract. It arbitrated an issue that had been settled previously by collective bargaining and which was not an issue in dispute. It proceeded to arbitrate while refusing to apply the criteria under which the parties had agreed to arbitration in the first place.

Where an arbitration panel exceeds its authority by deciding issues not submitted to it, the Texas Supreme Court has declared that the arbitration award, as to such matters, is void. *Guidry,* 327 S.W.2d at 408. We believe the rule applies to each of the reasons the arbitration panel exceeded its authority here. Thus, the appropriate remedy here is to reverse the judgment in its entirety, and render judgment that the IAFF take nothing, without prejudice, however, to such rights as the IAFF may have, if any, to further arbitration under the governing contract. *Guidry,* 327 S.W.2d at 411.

REVERSED, ARBITRATION AWARD VACATED, DISMISSED WITHOUT PREJUDICE.