**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-23-00200-CV**
_____

**DEBORAH LYNN PYLE, Appellant**

**V.**

**LAWRENCE JEROME WEDEKIND, Appellee**

_____

**On Appeal from the 418th District Court
Montgomery County, Texas
Trial Cause No. 20-10-13299-CV**
_____

**MEMORANDUM OPINION**

Appellant Deborah Lynn Pyle ("Pyle," formerly Deborah Wedekind) appeals the trial court's order confirming three arbitration awards pertinent to her divorce from Appellee Lawrence Jerome Wedekind ("Wedekind"). In support of her argument that the trial court should have vacated the arbitration awards, Pyle claims that the trial court erred by ordering the parties to arbitrate disputes and that the arbitrator was "evidently partial" and exceeded his authority. Since the trial court

1

did not err by confirming the arbitration awards, and Pyle did not meet the standard for vacating an arbitration award, we affirm the trial court's order. *See* Tex. Civ. Prac. & Rem. Code Ann. § 171.088(a).

## PERTINENT BACKGROUND INFORMATION

Pyle and Wedekind married in 2004 and divorced in June 2021. During the course of the divorce proceedings, they executed a Binding Mediated Settlement Agreement on Property Issues (MSA) and an Agreement Incident to Divorce (AID), which the trial court incorporated into its Agreed Final Decree of Divorce.[1] The divorce decree provides that in the event of "any differences between the Binding Mediated Settlement Agreement on Property Issues and this decree and Agreement Incident to Divorce," the divorce decree and the AID "shall control in all instances."

The MSA states, among other things:

> If any dispute arises with regard to the interpretation or performance of this Agreement or any of its provisions, including the necessity, form and substance of documents, the parties agree to try to resolve the dispute by telephone conference or meeting with . . . the Mediator who facilitated this settlement. Any disputes regarding drafting shall be resolved whenever possible or applicable by reference to the Texas Family Law Practice Manual, unless the Family Code has been modified after the published date of the manual or case law has effectively changed such suggested language; in such event the Family Code or applicable case law shall take precedence. In the event an agreement cannot be reached on drafting or intent, the mediator shall act as the arbiter of the issue and shall resolve the issue by telephone conference or meeting of the attorneys and mediator prior to the date of

---

[1] The record also contains Rule 11 agreements addressing the disposition of specific items of property. *See* Tex. R. Civ. P. 11.

2

entry. Attorneys' fees and costs of arbitration may be assessed by the mediator/arbitrator in any arbitration.

. . . .

The Family Law Bar consists of attorneys who interact on a frequent basis. The majority of the mediator's practice involves both simple and complex high conflict mediations and arbitrations. It is probable and likely that the mediator has had many prior professional relationships and friendships with all counsel involved in this case as a mediator, litigator, and arbitrator. In addition, because of the interaction with these attorneys through the years, it is not uncommon to develop interpersonal relationships with each other based on the nature of the practice, business relationships, professional specialty groups, participation in CLE functions, common interests outside of the practice, and social events. In spite of these interpersonal relationships, the mediator/arbitrator has likely ruled both for and against counsel in prior cases as an arbitrator based on the disputed facts of those specific cases and the applicable law. The parties understand that this disclosure is made so that a party is not prejudiced by any reasonable impression of bias or partiality. By signing this agreement, the parties acknowledge that this disclosure precludes any claim of prejudice by evident partiality of an arbitrator appointed as a neutral arbitrator and that the mediator has answered all questions of the parties regarding disclosures of relationships. The parties hereby further waive any conflicts of interest that may exist for the mediator to act as an arbitrator as set forth herein.

Both parties and their attorneys signed the MSA.

The parties' AID apportions the property between the parties and accounts for Pyle's interest in Wedekind's businesses, Intercare Health Systems, Ltd., Integranet Physician Resource, Inc., and Intercare 2016 Management Trust. More specifically, the AID addresses domestic and foreign real estate, bank and brokerage accounts, personal property such as art objects, motor vehicles, jewelry, collectibles and

3

precious metals, and the dog. The AID also specifies liability for various debts, such as credit card debt, attorneys' fees, and tax liability. In addition, the AID contains a mutual release of all claims and provides for arbitration of disputes, stating:

> IT IS HEREBY AGREED AND STIPULATED that some 11 schedules referenced within this Agreement Incident to Divorce below, unless executed contemporaneously with this agreement, are in dispute. IT IS THEREFORE AGREED that, unless the parties can resolve the disputes amongst themselves, the parties shall attend binding arbitration with [Arbitrator] on or before July 15, 2021 to resolve the remaining disputes.
>
> . . . .
>
> Except as otherwise provided in Article 7 [referencing non-disparagement of other parties] of this Agreement and in Schedule 1 of this Agreement, the parties agree to submit to binding arbitration with [Arbitrator] any dispute regarding interpretation, compliance, or enforcement of the terms and conditions set forth herein. Each party further waives any right to appeal the arbitration decision of [Arbitrator] related to the same.

The divorce decree, itself, which approves and incorporates the AID, also contains an arbitration provision, which states:

> As further set forth in the Agreement Incident to Divorce, the parties stipulate that some 11 Schedules referenced therein are in dispute. In the event the parties are unable to informally resolve such disputes, IT IS AGREED AND ORDERED that the parties shall attend arbitration with [Arbitrator] on or before July 15, 2021 to resolve all remaining disputes and shall submit within 24 hours of receipt of an award from [Arbitrator], the documents with the Arbitration Award for confirmation by the Court.

On May 12, 2022, Wedekind moved to compel arbitration, seeking enforcement of the AID as to the confidentiality and separation agreements

4

contemplated by the AID. Pyle opposed arbitration on the ground that the July 15, 2021 deadline set out in the AID and the divorce decree had passed. According to Pyle, the trial court lacked the "authority or jurisdiction to compel arbitration" rendering the disputed schedules "unenforceable 'agreements to agree.'" Thereafter, Pyle and Wedekind filed multiple pleadings and motions accusing each other of violating the terms of their AID and divorce decree and seeking sanctions therefor.

The trial court ordered the parties to arbitrate their disputes. The arbitrator returned three awards. In one instance, the arbitrator awarded fees and sanctions against Pyle for her Amended Counterclaim, which alleges that Wedekind and others fraudulently misrepresented relevant assets, income, and ownership transfers. The arbitrator found that Pyle violated Rule 13 of the Texas Rules of Civil Procedure and the Texas Civil Practice and Remedies Code by alleging "numerous factual inaccuracies[,]" that "run contrary to and directly contradict certain prior Final Orders, Judgments, and Agreements signed by Pyle." The arbitrator further found that "the allegations in the Amended Counterclaim were for an improper purpose, caused unnecessary delay, needlessly increased the cost of litigation, and was [sic] not warranted by existing law or by a non-frivolous argument for the extension, modification or reversal of existing law or the establishment of new law." Although the arbitrator distinguished between bad faith and negligence, he stated that Pyle should have made "reasonable inquiry" into her allegations before amending her

5

counterclaim, and "[t]he fact that Pyle may believe certain facts to be true does not necessarily make them so or equate to a good faith belief under the facts of this case." Finding good cause to award attorneys' fees as a sanction against Pyle, the arbitrator awarded $26,611.69 to the Lawrence J. Wedekind Family Trust and conditionally awarded the trust an additional $10,000 for each level of appellate fees. The arbitrator awarded Aaron Keiter, the Trustee for Intercare 2016 Management Trust, attorney's fees of $30,152.50. The arbitrator found that these awards were "just, appropriate, and necessary, and limited to an amount necessary to deter such conduct in the future and to compensate the prevailing parties for the attorney's fees incurred as a result of defending the Amended Counterclaim."

In another award, the arbitrator found that Jan German and Richard Stampp were prevailing parties and awarded them $1,888 in reasonable and necessary attorneys' fees on the ground that Pyle sought discovery from them that was "contrary to prior Final Judgments, Orders and Agreements signed by Pyle." The remaining arbitrator's award addresses "the arbitrability of drafting disputes and entry of one Confidentiality Order and Separation Agreement[.]" The Final Arbitration Decision and Award is dated January 16, 2023, and states:

> After hearing the argument of counsel and considering the pleading on file, the following is the arbitrator's award and decision as to each issue:
>
> 1. The Arbitrator finds as follows:

6

a. The 418th District Court ordered the parties to submit this dispute to arbitration in accordance with the provisions of the *Agreement Incident to Divorce* on June 9, 2021, and therefore the Arbitrator has jurisdiction over these matters.

b. Rule 91[]a does not apply to causes of action brought under the Family Code and therefore the Motion is denied as a matter of law.

c. Even if Rule 91[]a did apply to this enforcement action, Article V of the *Agreement Incident to Divorce*, which forms a substantial part of the judgment of the 418th District Court, necessarily contemplates the arbitration of disputes related to a Confidentiality Order and a Separation Agreement and the incorporation of said Disputed Closing Documents in the *Agreement Incident to Divorce* following the issuance of an Arbitration Award.

d. The future arbitrability of the Disputed Closing Documents formed an essential part of the agreement of the parties expressed in the *Agreement Incident to Divorce* and thus the judgment of the 418th District Court rendered on June 17, 2021.

e. By failing to appeal or otherwise challenge the June 17, 2021 judgment, Respondent waived any right to complain or raise contractual defenses to the enforcement of that judgment, including her argument that the Disputed Closing Documents constitute unenforceable agreements to agree.

2. Based on the foregoing, the Motion to Dismiss is DENIED.

3. Petitioner is entitled to the relief sought for a Confidentiality Order, attached hereto.

4. Petitioner is awarded $2,000.00 as requested in reasonable and necessary attorney's fees and costs for defending against the Rule 91a Motion to Dismiss.

7

Ms. Pyle shall pay such fees directly to Petitioner's counsel, [Wedekind's counsel] of [firm's name], [address], Houston, Texas 77056 on or before 5:00 p.m. on January 23, 2023.

Pyle admits in an affidavit there were at least two arbitration hearings held but she filed no transcript of the hearings stating: "there was a hearing on Mr. Wedekind's Motions for Sanctions on November 17, 2022. There was an additional hearing on Mr. Keiter's (Intercare (2016) Management Trust) Amended and Consolidated Motions for Sanctions on December 13, 2022." However, we have no reporter's record of any of the arbitration proceedings.

Wedekind and those associated with him asked the trial court to confirm the arbitration awards, while Pyle sought vacatur on the grounds that the trial court should not have compelled arbitration after July 15, 2021, the arbitrator should have recused himself due to his partiality or the appearance of partiality, that the arbitrator was "evidently partial" and exceeded his powers, and that the arbitrator "refused to hear evidence material[,]" and "[c]onducted the [h]earing [c]ontrary to TAA, substantially prejudicing the rights of the parties[.]" In addition, Pyle contended that the arbitrator exceeded his powers by awarding sanctions without authority to do so.

The trial court confirmed all three of the arbitrator's awards, stating:

After reviewing the pleadings, the *Motion to Confirm Arbitration Awards*, the request to vacate the awards, and hearing the argument of counsel, the Court finds that the Motion should be and is GRANTED.

IT IS THEREFORE ORDERED that the Arbitration Awards, attached hereto as **Exhibits "1", "2" and "3"** and issued by

8

[arbitrator's name] on January 16 and 17, 2023, are hereby confirmed, that each party is entitled to judgment on the same.

The ensuing paragraph is redacted and initialed by the trial court. This appeal followed.

## STANDARD OF REVIEW AND APPLICABLE LAW

We review a trial court's decision to confirm or vacate an arbitration award de novo. *See City of Beaumont v. Int'l Ass'n of Firefighters, Local Union No. 399*, 241 S.W.3d 208, 212 (Tex. App.—Beaumont 2007) (no pet.) (citing the standard of review). Texas law strongly favors arbitration. *See G.T. Leach Builders, LLC v. Sapphire V.P., L.P.*, 458 S.W.3d 502, 512 (Tex. 2015) (citation omitted). "Whether a given arbitration clause imposes a duty to arbitrate is a matter of contract interpretation and a question of law for the court." *Tex. Petrochemicals LP v. ISP Water Mgmt. Servs. LLC*, 301 S.W.3d 879, 884 (Tex. App.—Beaumont 2009, no pet.). "When construing a contract, 'a court must ascertain the true intentions of the parties as expressed in the writing itself.'" *Loya v. Loya*, 526 S.W.3d 448, 451 (Tex. 2017) (interpreting a mediated settlement agreement); *Embesi v. Hall*, No. 09-17-00254-CV, 2018 Tex. App. LEXIS 5771, at *8 (Tex. App.—Beaumont July 26, 2018, no pet.) (mem. op.) (addressing a marital property agreement incorporated into a final divorce decree). "'We give terms their plain, ordinary, and generally accepted meaning unless the instrument shows that the parties used them in a technical or different sense.'" *Loya*, 526 S.W.3d at 451 (citation omitted).

9

Because the scope of arbitration is a question of contract interpretation, it is a question that we review de novo. *See Tex. Petrochemicals LP*, 301 S.W.3d at 884 (citing *McReynolds v. Elston*, 222 S.W.3d 731, 740 (Tex. App.—Houston [14th Dist.] 2007, no pet.); *Dell, Inc. v. Muniz*, 163 S.W.3d 177, 180 (Tex. App.—San Antonio 2005, orig. proceeding); *Valero Energy Corp. v. Teco Pipeline Co.*, 2 S.W.3d 576, 589–90 (Tex. App.—Houston [14th Dist.] 1999, no pet.)). In reviewing a claim asserting that an arbitrator exceeded the authority granted by an arbitration, "[t]he scope of an arbitrator's authority to adjudicate a dispute is determined by the scope of the controlling arbitration clause." *The City of Beaumont*, 241 S.W.3d at 212. An arbitration award that exceeds the authority conferred by the arbitration agreement is void. *Id.* at 214. However, "[i]n the absence of a clear agreement to limit the arbitrator's authority and expand the scope of judicial review, this Court may not exercise expanded judicial review." *See Midani v. Smith,* No. 09-18-00009-CV, 2018 Tex. App. LEXIS 8954, at *4 (Tex. App.—Beaumont Nov. 1, 2018, pet. denied) (mem. op.) *(*citing *Forest Oil Corp. v. El Rucio Land & Cattle Co.*, 518 S.W.3d 422, 432 (Tex. 2017).

While judicial review to determine whether an arbitrator correctly applied the law to the facts is generally limited under the Texas Arbitration Act, the parties, by their contract, may agree to allow for judicial review of an arbitration award for reversible error. *See Nafta Traders, Inc. v. Quinn*, 339 S.W.3d 84, 97 (Tex. 2011).

10

Absent an agreement for expanded judicial review, judicial review of an arbitration award "is so limited that even a mistake of fact or law by the arbitrator in the application of substantive law is not a proper ground for vacating an award." *Centex/Vestal v. Friendship W. Baptist Church*, 314 S.W.3d 677, 683 (Tex. App.—Dallas 2010, pet. denied). On application of a party, the court shall vacate an award if:

> (1) the award was obtained by corruption, fraud, or other undue means;
>
> (2) the rights of a party were prejudiced by:
>
> > (A) evident partiality by an arbitrator appointed as a neutral arbitrator;
> > (B) corruption in an arbitrator; or
> > (C) misconduct or wilful misbehavior of an arbitrator;
>
> (3) the arbitrators:
>
> > (A) exceeded their powers;
> > (B) refused to postpone the hearing after a showing of sufficient cause for the postponement;
> > (C) refused to hear evidence material to the controversy; or
> > (D) conducted the hearing, contrary to section 171.043, 171.044, 171.045, 171.046, or 171.047, in a manner that substantially prejudiced the rights of a party; or
>
> (4) there was no agreement to arbitrate, the issue was not adversely determined in a proceeding under Subchapter B,[] and the party did not participate in the arbitration hearing without raising the objection.

Tex. Civ. Prac. & Rem. Code Ann. § 171.088(a).

When challenging a purportedly untimely arbitration award, the party claiming that the award was late must assert that objection before the arbitrator issues the award. *See Preston v. Dyer*, No. 09-11-00200-CV, 2012 Tex. App. LEXIS 9753, at \*\*12–13 (Tex. App.—Beaumont Nov. 29, 2012, pet. denied) (mem. op.) (denying relief due to lack of error preservation). In an arbitration, as in a trial, error preservation rules apply. *Id.* (citations omitted). Moreover, an error of law or fact on the arbitrator's part will not vitiate the award. *See Constr. Fin. Servs., Inc. v. Douzart*, No. 09-16-00035-CV, 2018 Tex. App. LEXIS 1551, at \*7 (Tex. App.—Beaumont Feb. 28, 2018, pet. denied) (mem. op.) (citations omitted) ("Generally, even where the arbitrator has made a mistake of law or fact, courts are not allowed to vacate or modify the award.").

## ANALYSIS

Pyle's threshold issue is the propriety of the arbitration, itself, for if the trial court erred in ordering the arbitration, we would not need to address Pyle's remaining issues, all of which allege improprieties in the arbitration. *See* Tex. R. App. P. 47.1.

The Arbitration Order

In her first issue, Pyle contends that the trial court erred in ordering arbitration on June 9, 2022, nearly eleven months after the July 15, 2021 arbitration deadline reflected in the AID and the divorce decree.

Although it is undisputed that both the AID and the decree state that disputes will be resolved by "binding arbitration with [Arbitrator] on or before July 15, 2021" and that the parties did not attend arbitration by that date, this delay will not necessarily preclude arbitration. *See G.T. Leach Builders*, 458 S.W.3d at 521–22 (holding that the effect of an arbitration deadline may be an issue for the arbitrator). To determine the effect of the July 15, 2021 deadline, we must first distinguish between "substantive arbitrability questions addressing the existence, enforceability, and scope of an agreement to arbitrate . . . ," and "procedural arbitrability questions addressing the construction and application of limits on that agreement . . . [,]" such as "'the satisfaction of 'prerequisites such as time limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate.'" *Id.* at 520–21. (quoting *BG Group plc v. Republic of Arg.*, 572 U.S. 25, 34–35 (2014)). Courts decide substantive arbitrability questions, while arbitrators decide procedural arbitrability questions. *Id.*

Neither Pyle nor Wedekind claims that their arbitration agreement was not valid except to the extent that Pyle argues that the lapse of time invalidated the agreement. Therefore, we proceed to consider the procedural arbitrability question concerning the arbitration deadline of July 15, 2021. *See G.T. Leach Builders*, 458 S.W.3d at 520–21 (holding that deadlines for arbitration were procedural arbitrability matters). In *G.T. Leach*, the court considered contractual language

requiring an arbitration demand to "be made within . . . a reasonable time after the Claim has arisen, and in no event shall it be made after the date when institution of legal or equitable proceedings based on such Claim would be barred by the applicable statute of limitations . . . ." *Id.* at 515–16. Here, as in *G.T. Leach*, the arbitration agreement contained an arbitration deadline, yet the party requesting arbitration did so after the deadline passed. *See id.* at 521. Despite the delay, the *G.T. Leach* court decided that it was a question of procedural arbitrability to be decided by the arbitrator. *Id.* at 519–23 ("[T]he courts must defer to the arbitrators to decide whether and how the contractual deadline affects that right [to arbitration].").

The holding in *G.T. Leach* governs Pyle's argument. Since the July 15, 2021 deadline in the parties' AID and divorce decree was procedural, not substantive, the trial court did not err in compelling arbitration in June 2022.

We overrule Pyle's first appellate issue.

The Arbitrator's Alleged Partiality

In her second issue, Pyle next claims that the arbitrator exhibited "evident partiality" by (1) declining to recuse himself before arbitration, "based on his conduct during prior mediation[,]" and (2) failing to disclose "relationships and business dealings that create[d] a reasonable impression of bias[.]" More specifically, Pyle contends that during the mediation, the arbitrator was partial, as shown by his "stress[ing] a million times" that Pyle "faced civil and criminal

14

liability" . . . "and implied that accepting the deal on the table at mediation was Pyle's best hope of avoiding that risk." Pyle also referenced her former attorney's assessment of the circumstances, as expressed in his June 22, 2022 email, wherein he stated that the arbitrator "stressed this a million times."

"Under Texas law, a person appointed as an arbitrator has a duty to disclose 'any information that might cause the person's impartiality or independence to be questioned.'" *Am. Allied Secs., Inc. v. Am. Gen. Secs., Inc.*, No. 14-99-01082-CV, 2000 Tex. App. LEXIS 6427, at *3 (Tex. App.—Houston [14th Dist.] Sept. 21, 2000, no pet.) (mem. op.) (quoting Tex. Civ. Prac. & Rem. Code Ann. § 172.056(a)). "A party seeking to vacate an arbitration award bears the burden of presenting a complete record that establishes grounds for vacatur." *Conn Appliances, Inc. v. Puente*, No. 09-18-00326-CV, 2020 Tex. App. LEXIS 6410, at *7 (Tex. App.—Beaumont Aug. 13, 2020, no pet.) (mem. op.)); *Shah v. Star Anesthesia, P.A.*, 580 S.W.3d 260, 265 (Tex. App.—San Antonio 2019, no pet.). The trial court was within its discretion to conclude that the methods employed by the arbitrator at the previous mediation did not demonstrate evident partiality, and since Pyle has not provided any record of the arbitration proceedings or other evidence establishing partiality, she has failed to establish grounds for vacatur based on the arbitrator's alleged evident partiality. *See Puente*, 2020 Tex. App. LEXIS 6410, at *7. Also, we note that the parties entered into a waiver of the right to appeal the arbitration. More

15

specifically, Pyle and her attorney agreed to this waiver in the AIM that was incorporated into the Final Decree, which stated "Each party further waives any right to appeal the arbitration decision of [Arbitrator] related to the same."

Pyle also alleges that the arbitrator was biased because he failed to disclose his family relationship to an attorney who became employed by the firm representing an adverse party on August 18, 2022. However, the parties' MSA recites just this likelihood:

> [T]hat the mediator has had many prior professional relationships and friendships with all counsel involved in this case as a mediator, litigator, and arbitrator. In addition because of the interaction with these attorneys through the years, it is not uncommon to develop interpersonal relationship with each other based on the nature of the practice, business relationships, professional specialty groups, participation in CLE functions, common interests outside of the practice and social events. In spite of these interpersonal relationships the mediator/arbitrator has likely ruled both for and against counsel in prior cases as an arbitrator based on the disputed facts of those specific cases and the applicable law. The parties understand that this disclosure is made so that a party is not prejudiced by any reasonable impression of bias or partiality. By signing this agreement, the parties acknowledge that this disclosure precludes any claim of prejudice by evident partiality of an arbitrator appointed as a neutral arbitrator and that the mediator has answered all questions of the parties regarding disclosure of relationships. The parties hereby further waive any conflicts of interest that may exist for the mediator to act as an arbitrator as set forth herein.

Pyle and Wedekind initialed each page of the MSA and signed the agreement on December 12, 2020, and their attorneys also signed it. Thus, the arbitrator adequately disclosed potential conflicts of interest in the MSA. Pyle produced no

16

evidence from the arbitration hearings showing any bias by the arbitrator and has failed to meet her burden on the motion to vacate the award. *See Puente*, 2020 Tex. App. LEXIS 6410, at \*7. We accordingly overrule Pyle's second issue.

The Arbitrator's Authority

In her third and fourth issues, Pyle argues that the arbitrator exceeded his authority "by awarding sanctions against Pyle" and by "award[ing] the [c]onfidentiality [o]rder without a hearing." Pyle specifically contends that sanctions were neither "contemplated or authorized" by the AID or the divorce decree and that section 171.088(a)(3)(A) of the Texas Civil Practice and Remedies Code required a hearing. "In determining whether the arbitrator has exceeded his power, any doubts concerning the scope of what is arbitrable are resolved in favor of arbitration." *Preston*, 2012 Tex. App. LEXIS 9753, at \*9. *See also Midani*, 2018 Tex. App. LEXIS 8954, \*12 (absent a clear agreement to limit the arbitrator's authority and expand the scope of judicial review, this Court may not exercise expanded judicial review).

The trial court's Order Granting Parties' Requests to Compel Arbitration recites that the parties stipulated that the scope of the arbitration would include not only the confidentiality and separation agreements, but also Pyle's "claims for post-divorce division of undivided assets as set forth in [Pyle's] counterclaim of breach of contract/fraudulent misrepresentation." The Order also states that "each party and

17

counsel will be bound by the rules established by the arbitrator, unless agreed by the parties."

The arbitrator's docket control order (DCO), states that "unless otherwise ordered or modified by the Arbitrator, the Texas Rules of Civil Procedure and the Texas Rules of Evidence shall apply." The Texas Rules of Civil Procedure permit the imposition of sanctions. *See* Tex. R. Civ. P. 13, 215.3. Rule 13 provides:

> The signatures of attorneys or parties constitute a certificate by them that they have read the pleading, motion, or other paper; that to the best of their knowledge, information, and belief formed after reasonable inquiry the instrument is not groundless and brought in bad faith or groundless and brought for the purpose of harassment. Attorneys or parties who shall bring a fictitious suit as an experiment to get an opinion of the court, or who shall file any fictitious pleading in a cause for such a purpose, or shall make statements in pleading which they know to be groundless and false, for the purpose of securing a delay of the trial of the cause, shall be held guilty of a contempt. If a pleading, motion or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, after notice and hearing, shall impose an appropriate sanction available under Rule 215-2b, upon the person who signed it, a represented party, or both.
>
> Courts shall presume that pleadings, motions, and other papers are filed in good faith. No sanctions under this rule may be imposed except for good cause, the particulars of which must be stated in the sanction order. "Groundless" for purposes of this rule means no basis in law or fact and not warranted by good faith argument for the extension, modification, or reversal of existing law. A general denial does not constitute a violation of this rule. The amount requested for damages does not constitute a violation of this rule.

Tex. R. Civ. P. 13.

18

Determining whether a party has violated Rule 13 was within the authority of the arbitrator as established by the trial court's order when it said, "IT IS FURTHER ORDERED that each party and counsel will be bound by the rules established by the arbitrator, unless agreed by the parties." The arbitrator's Docket Control Order, agreed to by the parties, ordered that the Rules of Civil Procedure shall apply.

Section 171.088 of the Texas Civil Practice and Remedies Code, set forth above, addresses grounds for vacating an arbitration award. *See* Tex. Civ. Prac. & Rem. Code Ann. § 171.088. Pyle does not substantiate her allegation that the arbitrator violated section 171.088 by "issu[ing] an award on the Confidentiality Order without holding a final hearing." *See id.* § 171.088(a)(3)(D). Pleadings and statements in post-arbitration briefing are not a substitute for a record of the arbitration. *Spears Constr. Mgmt., LLC v. Physical Therapy Dynamics, PLLC*, No. 02-22-00337-CV, 2023 Tex. App. LEXIS 808, at \*\*11-12 (Tex. App.—Fort Worth, Feb. 9, 2023), (pet. denied) (mem. op.). There is nothing in the statute that prevents an arbitrator from considering some issues by submission. That being said, Pyle has not shown how she was harmed by any failure to hold a hearing, if there was not one, and she has not pointed to any language in the confidentiality order to which she timely objected. We conclude that Pyle has not met her burden to show the arbitrator acted outside of his authority. *See Midani*, 2018 Tex. App. LEXIS 8954, at \*12; *and see Puente*, 2020 Tex. App. LEXIS 6410, at \*7.

19

We overrule Pyle's third and fourth issues.

The Delayed Confirmation

In her fifth issue, Pyle observes that Wedekind did not move to confirm the arbitration awards within twenty-four hours of receipt, as the parties' divorce decree required. Pyle argues that the trial court therefore lacked discretion to confirm the awards, so the trial court's order confirming the awards must be vacated.

While the parties' divorce decree requires the parties to "submit within 24 hours of receipt of an award from [the arbitrator], the documents with the Arbitration Award for confirmation by the Court[,]" the decree does not specify the consequence of failing to meet this deadline. Pyle has cited no authority to support this contention. In addition, Pyle has not shown how she was prejudiced by the delay in filing the arbitration awards with the trial court.

More importantly, Pyle failed to file a record or transcript of the arbitration proceeding upon which the trial court could evaluate her complaints against the evidence. *See CC Williams Constr. Co. v. Rico*, 2011 Tex. App. LEXIS 3885, at *6 (Tex. App.—Beaumont May 19, 2011, no pet.) (mem. op.) (When a non-prevailing party seeks to vacate an arbitration award, it bears the burden in the trial court of bringing forth a complete record that establishes its basis for vacating the award) (internal citations omitted). When asked by the court whether she had any evidence to present, Pyle's counsel replied "no." Pyle never explained how the

20

evidence failed to support the awards made by the arbitrator. Without an arbitration transcript, we must presume the arbitration evidence adequately supported an award. *See id.* We conclude that Pyle has failed to meet her burden on her motion to vacate the arbitration award. *Midani*, 2018 Tex. App. LEXIS 8954, at *12; *and see Puente*, 2020 Tex. App. LEXIS 6410, at *7. We therefore overrule Pyle's fifth issue.

## CONCLUSION

Having overruled all of Pyle's issues on appeal, we affirm the trial court's order confirming the arbitration awards.

AFFIRMED.

JAY WRIGHT
Justice

Submitted on March 13, 2025
Opinion Delivered July 31, 2025

Before Golemon, C.J., Wright and Chambers, JJ.

21